1                                                               'O'

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11

12   BASF CORPORATION,              CV 22-5018-RSWL-MRWx

13            Plaintiff,            **ORDER re:**
                                    **PLAINTIFF'S MOTION for**
14      v.                          **DEFAULT JUDGMENT** [14]

15   SJ'S COLLISION CENTER, et
16   al.,

17            Defendants.

18

19       Plaintiff BASF Corporation ("Plaintiff") initiated

20   this Action against Defendants SJ's Collision Center

21   ("Defendant SJ") and Grigor Garibyan

22   ("Defendant Garibyan") (collectively, "Defendants")

23   alleging breach of contract and unjust enrichment.

24   Currently before the Court is Plaintiff's Motion for

25   Default Judgment against Defendants on the breach of

26   contract and unjust enrichment claims.

27       Having reviewed all papers submitted pertaining to

28   the Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:**

                               1

the Court **GRANTS in part** and **DENIES in part** Plaintiff's
Motion for Default Judgment.

## I.   BACKGROUND

## A.   Factual Background

The Complaint Alleges:

Plaintiff is a business that sells refinishing,
conditioning, and paint products ("Refinish Products")
to distributors who in turn sell these products to
automotive body shops.  Compl. ¶ 4, ECF No. 2.
Defendant Garibyan is the owner of Defendant SJ, an
autobody shop engaged in the business of refinishing
vehicles.  Id. ¶¶ 5-6.

Plaintiff and Defendants entered a requirements
agreement (the "Agreement").  Id. ¶ 10.  Pursuant to the
Agreement, Defendant SJ was required to fulfill with
Plaintiff 100% of its requirements for Refinish Products
up to a minimum purchase requirement of $326,500.00 (the
"Minimum Purchase Requirement").  Id. ¶ 11.  Defendant
Garibyan guaranteed Defendant SJ's performance and
further promised to perform in Defendant SJ's absence.
Id. ¶ 14.

Plaintiff paid Defendants $20,000.00 in
consideration (the "Consideration") in exchange for
Defendants' contractual obligations.  Id. ¶ 12.  If
Defendants did not fulfill the Minimum Purchase
Requirement, then Defendants had to refund the
Consideration in accordance with a schedule.  Id. ¶ 13.
Per the schedule, if Defendants purchased less than 20%

of the Minimum Purchase Requirement, then Defendants had to refund Plaintiff 110% of Plaintiff's Consideration, or $22,000.00. Id.

In 2020, Defendant SJ terminated its contract with Plaintiff without purchasing the Minimum Purchase Requirement from Plaintiff as set out in the contract. Id. ¶ 15. Defendant SJ only purchased about $50,651.00 in Refinish Products from Plaintiff. Id. ¶ 16. Defendant Garibyan refused to refund or cover for Defendant SJ's breach. Id. ¶ 18. As specified in the contract, Defendants purchased less than 20% of the Minimum Purchase Requirement, which triggered a consideration repayment of $22,000.00. Id. ¶ 17.

Plaintiff has fulfilled its obligations and remains ready and willing to perform under the contract. Id. ¶ 19.

**B.  Procedural Background**

On July 21, 2022, Plaintiff filed its Complaint [2] alleging claims for breach of contract and unjust enrichment. On July 26, 2022, Plaintiff served Defendant SJ with the Summons and Complaint upon its agent for service of process [11], with a response due by August 16, 2022. On August 4, 2022, Plaintiff served Defendant Garibyan with the Summons and Complaint upon the designated person in charge at Defendant Garibyan's business address [10], with a response due by August 25, 2022. Both Defendants failed to respond to the Complaint by the applicable deadlines.

1      Since Defendants failed to answer, Plaintiff

2  applied for the Clerk to enter Default against

3  Defendants [12] on September 27, 2022.  On September 29,

4  2022, the Clerk entered Default [13].  On January 6,

5  2023, Plaintiff filed a Motion for Default Judgment

6  ("Motion") [14] against Defendants.  On that same day,

7  Plaintiff served Defendants with notice of the Entry of

8  Default Judgment and notice of the Motion.  Defendants

9  did not file an opposition.

10      For Defendants' failure to purchase the Minimum

11  Purchase Requirement under the Agreement, Plaintiff

12  seeks $275,849.00 in expectation damages.  Plaintiff

13  additionally seeks $22,000 in liquidated damages.

14  Lastly, Plaintiff seeks filing fees in the amount of

15  $402.00 and fees for service of process in the amount of

16  $240.90.  In total, Plaintiff seeks $298,491.90.

17                 **II.   DISCUSSION**

18  **A.   Legal Standard**

19      The granting of default judgment is within the

20  discretion of the district court.  <u>Aldabe v. Aldabe</u>, 616

21  F.2d 1089, 1092 (9th Cir. 1980); <u>see</u> Fed. R. Civ. P. 55.

22  Procedural and substantive requirements must be

23  satisfied.

24      Procedurally, the requirements set forth in Federal

25  Rules of Civil Procedure ("FRCP" or "Rule") 54(c) and

26  55(b), and Local Rule 55-1 must be met.  <u>See</u> <u>Vogel v.</u>

27  <u>Rite Aid Corp.</u>, 992 F. Supp. 2d 998, 1006 (C.D. Cal

28  2014).  Local Rule 55-1 provides:

When an application is made to the Court for a
default judgment, the application shall be
accompanied by a declaration in compliance with
[Rule] 55(b)(1) and/or (2) and include the
following: (a) when and against what party the
default was entered; (b) the identification of
the pleading to which default was entered;
(c) whether the defaulting party is an infant
or incompetent person, and if so, whether that
person is represented by a general guardian,
committee, conservator or other representative;
(d) that the Service Members Civil Relief Act,
50 U.S.C. App. § 521, does not apply; and
(e) that notice has been served on the
defaulting party, if required by Rule 55(b)(2).

L.R. 55-1.

Courts should also consider the following factors
in determining whether to grant a motion for default
judgment: "(1) the possibility of prejudice; (2) the
merits of [the] substantive claims; (3) the sufficiency
of the complaint; (4) the sum of money at stake; (5) the
possibility of a dispute concerning material facts; (6)
excusable neglect; and (7) the strong public policy
favoring decisions on the merits." Eitel v. McCool, 782
F.2d 1470, 1471-72 (9th Cir. 1986).

If the court determines that the defendant is in
default, "'the factual allegations of the complaint,
other than those relating to damages, are taken as

true.'"  <u>Televideo Sys., Inc. v. Heidenthal</u>, 826 F.2d

915, 917-18 (9th Cir. 1987) (quoting <u>Geddes v. United</u>

<u>Fin. Group</u>, 559 F.2d 557, 560 (9th Cir. 1977)).

Additionally, "[w]hen entry of judgment is sought

against a party who has failed to plead or otherwise

defend, a district court has an affirmative duty to look

into its jurisdiction over both the subject matter and

the parties."  <u>In re Tuli</u>, 172 F.3d 707, 712 (9th Cir.

1999).

     If the Court determines that the allegations in the

complaint are sufficient to establish liability, the

plaintiff must provide proof of all damages sought in

the complaint, and the Court must determine the "amount

and character" of the relief that should be awarded.

<u>Vogel</u>, 992 F. Supp. 2d at 1005-06 (citations omitted).

"A default judgment must not differ in kind from, or

exceed in amount, what is demanded in the pleadings."

Fed. R. Civ. P. 54(c).

**B.  <u>Discussion</u>**

     1.  <u>Jurisdiction and Service of Process</u>

          a.  *Subject Matter Jurisdiction*

     In evaluating whether to enter default judgment,

the Court first determines whether it has jurisdiction

over the subject matter and the parties.  See <u>In re</u>

<u>Tuli</u>, 172 F.3d at 712.

     Pursuant to 28 U.S.C. § 1332(a)(1), district courts

have original jurisdiction over "all civil actions where

the matter in controversy exceeds the sum or value of

1   $75,000, exclusive of interest and costs, and is between
2   . . . citizens of different States[.]"  In determining
3   whether diversity exists, a corporation is a citizen of
4   the state it was incorporated in and the state where it
5   has its principal place of business.  28 U.S.C. §
6   1332(c)(1).

7        Here, the requirements for diversity jurisdiction
8   are satisfied.  Plaintiff seeks more than $75,000.00.
9   See generally Compl.  Additionally, Plaintiff and
10  Defendants are citizens of different states.  Plaintiff
11  is incorporated in Delaware and has its principal place
12  of business in New Jersey.  Id. ¶ 1.  Defendant SJ is
13  incorporated and has its principal place of business in
14  California.  Id. ¶ 2.  Defendant Garibyan resides and is
15  domiciled in California.  Id. ¶ 3.  Thus, Plaintiff is a
16  citizen of Delaware and New Jersey, while Defendants are
17  citizens of California.

18       Therefore, the Court has diversity jurisdiction
19  over this claim under 28 U.S.C. § 1332.

20            b.  *Personal Jurisdiction*

21       Personal jurisdiction is also satisfied.
22  Defendants are citizens of California, where this Action
23  is brought.  Defendants conduct a substantial portion of
24  their business and own property in California.  Thus,
25  Defendants have "certain minimum contacts" with
26  California such that exercising personal jurisdiction
27  over Defendants would not "offend traditional notions of
28  fair play and substantial justice."  Calder v. Jones,

1  465 U.S. 783, 788 (1984).

2            c.  *Service of Process Is Proper*

3       Service of process is met because Plaintiff served

4  Defendant SJ with the Summons and Complaint on July 26,

5  2022.  Plaintiff served the Summons and Complaint on

6  Defendant SJ's agent for service of process.

7  Furthermore, Plaintiff served Defendant Garibyan on

8  August 4, 2022.  Plaintiff served the Summons and

9  Complaint on Defendant Garibyan at Defendant Garibyan's

10 office or usual place of business.

11      2.  Procedural Requirements

12      Plaintiff has met the procedural requirements for

13 default judgment pursuant to Federal Rules of Civil

14 Procedure 55 and Central District Local Rule 55-1.

15 Under Rule 55(a), the Clerk properly entered default

16 against Defendants on September 29, 2022 [13].

17 Plaintiff moved pursuant to Rule 55(b) for entry of

18 default judgment on January 6, 2023 [14].

19      Plaintiff has also established the Local Rule 55-1

20 requirements.  The Clerk entered default against

21 Defendants on September 29, 2022.  Defendants are

22 neither minors, nor incompetent persons nor in the

23 military service nor otherwise exempted under the

24 Servicemembers Civil Relief Act, 50 U.S.C. App. § 521.

25 Furthermore, Defendants were properly served with the

26 Motion for Default Judgment.

27      3.  Eitel Factors

28      In considering whether entry of default judgment is

8

1   warranted, courts consider several factors: "(1) the

2   possibility of prejudice; (2) the merits of plaintiff's

3   substantive claims; (3) the sufficiency of the

4   complaint; (4) the sum of money at stake; (5) the

5   possibility of a dispute concerning the material facts;

6   (6) excusable neglect; and (7) the strong public policy

7   favoring decisions on the merits."  Eitel, 782 F.2d at

8   1471-72.

9           a.  *Risk of Prejudice to Plaintiff*

10      "The first Eitel factor considers whether a

11  plaintiff will suffer prejudice if a default judgment is

12  not entered."  Vogel, 992 F. Supp. 2d at 1007.

13      This factor weighs in favor of granting default

14  judgment.  Defendants neither filed nor requested an

15  extension to submit an opposition.  As such, Defendants

16  have failed to participate in the litigation and,

17  without default judgment, Plaintiff would be unable to

18  recoup damages for harm suffered.  IO Grp., Inc. v.

19  Jordon, 708 F. Supp. 2d 989, 997 (N.D. Cal. 2010).

20          b.  *Sufficiency of the Complaint and Likelihood*

21              *of Success on the Merits*

22      The second and third Eitel factors consider the

23  merits of the plaintiff's substantive claims and the

24  sufficiency of the complaint.  "Under an [Eitel]

25  analysis, [these factors] are often analyzed together."

26  Dr. JKL Ltd. V. HPC IT Educ. Ctr., 749 F. Supp. 2d 1038,

27  1048 (N.D. Cal. 2010).  Here, while Plaintiff has

28  asserted a meritorious claim for breach of contract,

1   Plaintiff has not asserted a meritorious claim for
2   unjust enrichment.
3                     i.  *Breach of Contract*
4        To properly plead a breach of contract claim, a
5   plaintiff must prove: (1) the existence of a valid
6   contract; (2) plaintiff performed its obligations under
7   the contract; (3) defendant failed to perform its
8   obligations under the contract; and (4) this non-
9   performance resulted in damages to the plaintiff.
10  Sheldon Abend Revocable Tr. v. NBC Universal, Inc.,
11  No. CV 11-37 DSF (SHX), 2011 WL 13220378, at *1 (C.D.
12  Cal. June 28, 2011).
13       Here, Plaintiff and Defendants entered a valid
14  contract, the Agreement, to buy and sell Refinish
15  Products.  See generally Mot.; Ex. A, ECF No. 2.  There
16  is no evidence to suggest that Defendants did not intend
17  to be legally bound by the Agreement and its terms.
18  Moreover, Plaintiff alleges it has performed and
19  fulfilled all obligations and conditions required under
20  the Agreement.  Compl. ¶ 28.
21       Furthermore, Plaintiff alleges Defendants failed to
22  meet their obligations as required by the Agreement.
23  Id. ¶¶ 24-25.  Specifically, Defendants failed to meet
24  the Minimum Purchase Requirement under the Agreement,
25  with an outstanding balance of $275,849.00 owed.  Id.
26  As part of the Agreement, Defendants also failed to
27  refund 110% of the Consideration.  Id. ¶ 26.  Therefore,
28  Plaintiff has sufficiently alleged a breach of contract

1  claim against both Defendants.

2              ii. *Unjust Enrichment*

3      Generally, California law does not permit a

4  standalone cause of action for unjust enrichment.

5  Paracor Fin., Inc. v. Gen. Elec. Capital Corp., 96 F.3d

6  1151, 1167 (9th Cir. 1996).  Unjust enrichment is a

7  quasi-contract that is implied by law to return the

8  aggrieved party to the position they were in before they

9  provided the benefit to the unjustly enriched party.

10  Id.  An unjust enrichment cause of action also fails if

11  the parties are bound by an enforceable express

12  contract.  Durell v. Sharp Healthcare, 183 Cal. App. 4th

13  1350, 1370 (2010).  Here, because the Court finds the

14  Agreement to be an existing valid contract, Plaintiff's

15  unjust enrichment claim fails as a matter of law.

16      For these reasons, the Court **DENIES** Plaintiff's

17  Motion with respect to Plaintiff's claim for unjust

18  enrichment.

19              c. *Sum of Money at Stake in the Action*

20      "Under the [fourth] Eitel factor, the court must

21  consider the amount of money at stake in relation to the

22  seriousness of [the] [d]efendant's conduct." PepsiCo,

23  Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1176 (C.D.

24  Cal. 2002).  The Court will review declarations,

25  calculations, and other damages documentation to

26  determine whether the sum of money at stake is

27  appropriate.  HICA Educ. Loan Corp. v. Warne, No. 11-CV-

28  04287-LHK, 2012 WL 1156402, at *3 (N.D. Cal. Apr. 6,

2012).

Here, Plaintiff requests $275,849.00 in expectation damages for the Defendants' non-fulfillment of the Minimum Purchase Requirement, as well $22,000.00 as liquidated damages pursuant to the Consideration repayment term in the Agreement.  Mot. at 8:26-28.

While the Court finds that Plaintiff's request for a refund on the Consideration is reasonable considering Defendants' alleged breach, an award of the remaining balance does not reflect the actual damages incurred by Plaintiff.

An award of contract damages is meant to compensate the aggrieved party "for the loss of his 'expectational interest' — the benefit of his bargain which full performance would have brought." Runyan v. Pac. Air Indus., Inc., 2 Cal. 3d 304, 316 n.15 (1970).  "The goal is to put the plaintiff in as good a position as [it] would have occupied if the defendant had not breached the contract." Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist., 34 Cal. 4th 960, 967 (2004) (internal quotation marks omitted).  However, "[d]amages must, in all cases, be reasonable, and where an obligation of any kind appears to create a right to unconscionable and grossly oppressive damages, contrary to substantial justice, no more than reasonable damages can be recovered." Cal. Civ. Code § 3359.

Here, Plaintiff fails to support its request for expectation damages in the amount of $275,849.00.  The

measure of damages here should be for the profit
Plaintiff would have made had Defendants fulfilled the
Agreement and purchased the Minimum Purchase
Requirement.  Plaintiff does not offer any evidence or
calculation method for determining its lost profit.  See
generally Mot.  Instead, Plaintiff fails to explain how
awarding $275,849.00 would not amount to a windfall, in
that Plaintiff would possess both (1) compensation for
the products not actually sold to Defendants, as well as
(2) retain the Refinish Products, which Plaintiff may
now sell to another buyer.

Therefore, the Court finds that awarding Plaintiff
$275,849.00 is unsupported, unreasonable, and would be
"oppressive" and "contrary to substantial justice."
Cal. Civ. Code § 3359.  Accordingly, the Court **DENIES**
Plaintiff's request for $275,849.00 in expectation
damages.

Given Plaintiff's failure to substantiate why it
should recover the remaining balance on the Refinish
Products it did not actually supply, the Court finds
that the fourth Eitel factor does not weigh in favor of
entering default.  See generally Compl.; Mot.

       d.   *The Possibility of a Dispute Concerning the*
             *Material Facts*

The fifth Eitel factor examines the likelihood of a
dispute between the parties regarding the material facts
in the case.  A defendant is "deemed to have admitted
all well-pleaded factual allegations" in the complaint

1  upon entry of default.  <u>DirecTV, Inc. v. Hoa Huynh</u>, 503
2  F.3d 847, 851 (9th Cir. 2007).

3      This factor weighs towards granting default
4  judgment.  There is a low possibility of dispute as the
5  Complaint aptly demonstrates that Defendants breached
6  the Agreement by not fulfilling the Minimum Purchase
7  Requirement and in turn, not refunding the Consideration
8  it was required to return.  <u>See generally</u> Compl.
9  Additionally, due to Defendants' lack of response after
10 default was entered against them, they have failed to
11 dispute any material facts.

12      e.  *The Possibility of Excusable Neglect*
13      Excusable neglect considers factors such as
14 "prejudice . . ., the length of the delay and its
15 potential impact on judicial proceedings, the reason for
16 the delay, including whether it was within the
17 reasonable control of the movant, and whether the movant
18 acted in good faith."  <u>J.L. v. Moreno Valley Unified</u>
19 <u>Sch. Dist.</u>, No. CV 09-1978 ODW (PJWx), 2010 WL 1708839,
20 at *1 (C.D. Cal. Apr. 20, 2010) (internal quotation
21 marks and citations omitted).

22      Excusable neglect is negligible, as Defendants
23 received the Summons, Complaint, and instant Motion.
24 Defendants failed to either oppose the Motion or request
25 an extension to file an opposition.  Thus, this factor
26 weighs in favor of default.
27 ///
28 ///

1        f. *Public Policy Favoring Decisions on the*

2              *Merits*

3     The Ninth Circuit has stated that "[c]ases should

4 be decided upon their merits whenever reasonably

5 possible." Eitel, 782 F.2d at 1472.  However, "this

6 preference, standing alone, is not dispositive."

7 PepsiCo, 238 F. Supp. 2d at 1177.  The breach of

8 contract claim cannot be adjudicated, as Defendants

9 failed to answer or appear in this Action.  While this

10 factor may weigh against entering default judgment, in

11 total, the Eitel factors weigh towards granting in part

12 and denying in part default judgment.

13     Therefore, the Court **GRANTS in part** and **DENIES in**

14 **part** the Motion considering the remaining factors.

15     4.  Character and Amount of Plaintiff's Recovery

16     Plaintiff requests $275,849.00 in expectation

17 damages, $22,000.00 in liquidated damages, $402.00 for

18 filing fees in accordance with Local Rule 54-3.1, and

19 $240.90 for service of process fees in accordance with

20 Local Rule 54-3.2.  See generally Mot.

21        a. *Breach of Contract Damages*

22     Where there is a successful claim for a breach of

23 contract, the baseline measurement for damages is

24 determined by what would make the prevailing, non-

25 breaching party "'whole,' that is, enough to place the

26 non-breaching party in the same position as if the

27 breach had not occurred." Postal Instant Press, Inc. v.

28 Sealy, 43 Cal. App. 4th 1704, 1709 (1996) (quoting

1   Applied Equip. Corp. v. Litton Saudi Arabia, Ltd., 7
2   Cal. 4th 503, 515 (1994)).

3       In this case, these damages are addressed as
4   expectation damages.  As previously discussed above,
5   Plaintiff's request for $275,849.00 in expectation
6   damages is unsupported, and it would be unreasonable or
7   "contrary to substantial justice" to award Plaintiff
8   such damages.  Cal. Civ. Code § 3359; see BASF Corp. v.
9   ENS, Inc., No. 2:22-cv-00577-ODW (GJSx), 2022 U.S. Dist.
10  LEXIS 208357, at *12-13 (C.D. Cal. Nov. 16, 2022)
11  (holding under very similar facts that a plaintiff's
12  request for expectation damages was unsupported and
13  unreasonable because the plaintiff offered no evidence
14  or calculation method in determining said damages).

15      Therefore, Plaintiff's request for expectation
16  damages of $275,849.00 is **DENIED**.

17          b.  *Liquidated Damages*

18      Plaintiff's request for the return of the
19  Consideration pursuant to a provision in the Agreement
20  qualifies as a request for liquidated damages.  See BASF
21  Corp. v. Al's Body Shop of Huntington Park, Inc., No. CV
22  19-4306-RSWL-JPR, 2019 U.S. Dist. LEXIS 194985, at *15
23  (C.D. Cal. Nov. 7, 2019).  "Liquidated damages
24  constitute a sum which a contracting party agrees to pay
25  or a deposit which he agrees to forfeit for breach of
26  some contractual obligation."  ABI, Inc. v. City of Los
27  Angeles, 153 Cal. App. 3d 669, 684.

28      To determine whether liquidated damages are

1  appropriate, the Court must examine whether the
2  liquidated damages clause would be unenforceable as a
3  penalty.  See McGuire v. More-Gas Invs., LLC, 220 Cal.
4  App. 4th 512, 522 (2013).  If the liquidated damages are
5  disproportionate compared to the actual damages
6  anticipated, then the provision is considered a penalty.
7  Howard v. Babcock, 6 Cal. 4th 409, 425 (1993).  As a
8  result, the penalty is deemed ineffective, and the
9  plaintiff can only recover the actual damages sustained.
10 Perdue v. Crocker Nat'l Bank, 38 Cal. 3d 913, 931
11 (1985).

12      Here, Defendants fulfilled less than 20% of the
13 Minimum Purchase Requirement, and therefore Plaintiff
14 may recover $22,000.00 as liquidated damages, provided
15 the liquidated damages term does not constitute a
16 penalty.  The Agreement sets forth decreasing
17 percentages of a refund in the event that Defendants
18 fulfilled a greater portion of the Minimum Purchase
19 Requirement.  Thus, the total refund amount is
20 reasonably proportionate to anticipated actual damages
21 and directly linked to the circumstances of any breach.
22 Accordingly, the Court concludes the liquidated damages
23 term is not disproportionate to the actual damages
24 anticipated and is not viewed as a penalty.  See, e.g.,
25 BASF Corp. v. SSM Auto. Grp., Inc., No. 5:21-cv-01191-
26 MEMF (SHKx), 2022 U.S. Dist. LEXIS 119750, at *14-15
27 (C.D. Cal. May 17, 2022) (finding that a similar
28 liquidated damages provision was not disproportionate

1    and should not be viewed as a penalty).

2         Therefore, Plaintiff's request of liquidated

3    damages pursuant to the provision in the Agreement is

4    **GRANTED** in the amount of $22,000.00.

5              c.   *Clerk's Fees and Fees for Service of*

6                   *Process*

7         Finally, Plaintiff seeks to recover $402.00 for

8    Clerk's filing fees and $240.90 for service of process

9    on Defendants.  Mot. at 10:1-2.  Local Rule 54-1 and

10   Federal Rule of Civil Procedure 54(d) provide that a

11   prevailing party is entitled to an award of costs

12   incurred.

13        Accordingly, Plaintiff's request for Clerk's filing

14   fees and service of process is **GRANTED** in the amount of

15   $642.90.

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

### III. CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's Motion for Default Judgment as to the breach of contract claim and **DENIES** Plaintiff's Motion as to the unjust enrichment claim.  In sum, Plaintiff has sufficiently pled breach of contract and is awarded $22,642.90: $22,000.00 in liquidated damages; $402.00 in Clerk's fees pursuant to Local Rule 54-3.1; and $240.90 in fees for service of process pursuant to Local Rule 54-3.2.

**IT IS SO ORDERED.**

DATED: March 14, 2023          /s/Ronald S.W. Lew
                               **HONORABLE RONALD S.W. LEW**
                               Senior U.S. District Judge